**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| | **Civil Action No.** |
| **Latoya Berry,** | |
| **Latoya Wofford,** | |
| **Manfred McGill,** | **Complaint** |
| **Margaret Johnson,** | |
| **Melissa Tucker,** | **and;** |
| **Monica Matlock,** | |
| **Nora Alvarez,** | **Demand for Jury Trial** |
| **Patrick Larson,** | |
| **Robin Cook,** | |
| **Robyn Huddle,** | |
| **Robyn Galyean,** | |
| **Ronald Buescher,** | |
| **Rose Shaddix,** | |
| **Sajjad Mirza,** | |
| **Sarah Johnson,** | |
| **Sharon Richard,** | |
| **Starsha Grant,** | |
| **Stephanie Kingsley,** | |
| **Temprince Harris,** | |
| **Tiffany Weddle,** | |
| **Tracey Sullivan,** | |
| **Tristan Berry, and** | |
| **Vicki Richardson** | |

**Plaintiffs**

**v.**

**OPTIMUM OUTCOMES,**
**INC.**

## COMPLAINT

NOW COMES Plaintiffs, **Latoya Berry, Latoya Wofford, Manfred McGill, Margaret Johnson, Melissa Tucker, Monica Matlock, Nora Alvarez, Patrick Larson, Robin Cook, Robyn Huddle, Robyn Galyean, Ronald Buescher, Rose Shaddix, Sajjad Mirza, Sarah Johnson, Sharon Richard,  Starsha Grant, Stephanie Kingsley, Temprince Harris, Tiffany Weddle, Tracey Sullivan, Tristan Berry, and Vicki Richardson** (hereafter the "Plaintiffs) by and through undersigned Counsel, whom through this Complaint allege the following:

### <u>PRELIMINARY STATEMENT</u>

1.      This is an action for actual, statutory and exemplary damages, costs, and Attorneys' fees pursuant to 15 U.S.C. §1692, commonly referred to as the Fair Debt Collection Practices Act, (herein, "FDCPA"), Tex. Fin. Code Ann. § 392, commonly referred to as the Texas Fair Debt Collection Practices Act (herein, "TFDCPA") and V.T.C.A., Civil Practice & Remedies Code § 41.001.

### <u>JURISIDICTION AND VENUE</u>

2.      Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p), 15 U.S.C. 1692k(d), and 28 U.S.C. §1331.

3.      Venue in this District is appropriate under 28 U.S.C. §1391(b)(1) because the defendant in this matter resides in all the Federal Districts of the state of Texas as defined under 28 U.S.C. §1391 (c)(2) and 28 U.S.C. §1391 (d).

**PARTIES**

4.        Plaintiffs are natural persons and residents and citizens of the United States of America.  Plaintiffs are "consumers" as that term is defined by 15 U.S.C. §1692a (3) and Tex. Fin. Code Ann. § 392.001(1).

5.        Defendant, **OPTIMUM OUTCOMES, INC**, (hereinafter **OPTIMUM**), is a "debt collector", as defined by 15 U.S.C §1692a(6) and Tex. Fin. Code Ann. § 392.001(6). Defendant is engaged in the business with the purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Defendant is currently doing business in Texas.

**FACTUAL ALLEGATIONS**

6.        Plaintiffs   incorporates the foregoing paragraphs as though the same were set forth at length herein.

7.        **OPTIMUM** did not follow or have reasonable procedures established to insure maximum possible accuracy and to prevent violating 15 U.S.C.A. § 1692e(8), Tex. Fin. Code Ann. § 392.304(8), and Tex. Fin. Code Ann. § 392.304(19) while it was in the process of collecting consumer debts from Plaintiffs.  Furthermore, Defendant was grossly negligent in failing to adopt reasonable procedures to avoid this specific harm that Plaintiffs' have suffered and thus OPTIMUM is liable to Plaintiffs for exemplary damages under V.T.C.A., Civil Practice & Remedies Code § 41.001.  Additionally, OPTIMUM is also liable to Plaintiffs for exemplary damages under V.T.C.A., Civil Practice & Remedies Code § 41.001 due to the fact it fraudulently failed to report the correct disputed status of the alleged debts it was attempting to collect from Plaintiffs on their consumer credit reports. Finally, OPTIMUM has made Plaintiffs victims

violating the Texas Fair Debt Collection Practices Act § 392.402 and has thus caused Plaintiffs actual harm.

### PLAINTIFF'S DISPUTES

8. Plaintiffs disputed information regarding their OPTIMUM accounts by and through the Credit Reporting Agencies (EXPERIAN, TRANSUNION and EQUIFAX) on the following dates:

a)  Latoya Berry Disputed Defendant Acct# 3582 showing a debt balance of $1,290 on December 23, 2017 through a letter to TRANS UNION.

b)  Latoya Wofford    Disputed Defendant Acct# 3699 with a balance of $370, Acct# 6532 with a balance of $150 and Acct# 9522 with a balance of $61 on February 13, 2018 through a letter to EQUIFAX.

c)  Manfred McGill    Disputed Defendant Acct# 5877 showing a debt balance of $32 on April 27, 2018 through a letter to EQUIFAX.

d)  Margaret Johnson Disputed Defendant Acct# 3944 showing a debt balance of $1,942 on January 31, 2018 through a letter to TRANS UNION.

e)  Melissa Tucker Disputed Defendant Acct# 7740 with a balance of $10,356 and Acct# 7981 with a balance of $212 on February 13, 2018 through a letter to EQUIFAX.

f) Monica Matlock    Disputed Defendant Acct# 1896 with a balance of $30 and Acct# 1827 with a balance of $30 on June 5, 2018 through a letter to EXPERIAN.

g)  Nora Alvarez Disputed Defendant Acct# 3854 showing a debt balance of $1,901 on July 13, 2017 through a letter to TRANS UNION.

h)  Patrick Larson Disputed Defendant Acct# 6530 showing a debt balance of $228 on April 30, 2018 through a letter to EQUIFAX.

i)   Robin Cook Disputed Defendant Acct# 3953 showing a debt balance of $600 on September 25, 2017 through a letter to TRANS UNION.

j) Robyn Huddle Disputed Defendant Acct# 2878 showing a debt balance of $30 on September 25, 2017 through a letter to EQUIFAX.

k)  Robyn Galyean Disputed Defendant Acct# 4992 with a balance of $30 and Acct# 7415 with a balance of $275 on February 13, 2018 through a letter to EQUIFAX.

l)  Ronald Buescher   Disputed Defendant Acct# 5867 showing a debt balance of $884 on January 20, 2018 through a letter to EXPERIAN.

m)  Rose Shaddix Disputed Defendant Acct# 3589 with a balance of $625, Acct# 3903 with a balance of $2,660 and Acct# 3905 with a balance of $740 on August 14, 2017 through a letter to TRANS UNION.

n) Sajjad Mirza Disputed Defendant Acct# 1141 with a balance of $104 and Acct# 2979 with a balance of $99 on November 13, 2017 through a letter to EQUIFAX.

o)  Sarah Johnson Disputed Defendant Acct# 9276 with a balance of $536, Acct# 8268 with a balance of $48, Acct# 1877 with a balance of $108, Acct# 2040 with a balance of $38, Acct# 9253 with a balance of $28 and Acct# 9232 with a balance of $29 on April 24, 2018 through a letter to EQUIFAX.

p)  Sharon Richard Disputed Defendant Acct# 7556 showing a debt balance of $460 on November 9, 2017 through a letter to EQUIFAX.

q) Starsha Grant Disputed Defendant Acct# 5083 with a balance of $103 and Acct# 6251 with a balance of $285 on February 13, 2018 through a letter to EQUIFAX.

r) Stephanie Kingsley Disputed Defendant Acct# 5148 showing a debt balance of $7,161 on April 24, 2018 through a letter to EQUIFAX.

s) Temprince Harris Disputed Defendant Acct# 5295 showing a debt balance of $179 on April 21, 2018 through a letter to EQUIFAX.

t) Tiffany Weddle Disputed Defendant Acct# 0985 showing a debt balance of $146 on April 23, 2018 through a letter to EQUIFAX.

u)  Tracey Sullivan Disputed Defendant Acct# 5812 with a balance of $54, Acct# 8097 with a balance of $30, Acct# 7378 with a balance of $30 and Acct# 5172 with a balance of $380 on June 21, 2018 through a letter to EQUIFAX.

v)   Tristan Berry Disputed Defendant Acct# 6025 with a balance of $62, Acct# 1107 with a balance of $25, Acct# 2165 with a balance of $35, Acct# 0391 with a balance of $125, Acct# 7966 with a balance of $48, Acct# 8195 with a balance of $62 and Acct# 9717 with a balance of $225 on September 25, 2017 through a letter to EQUIFAX.

w)  Vicki Richardson Disputed Defendant Acct# 6640 showing a debt balance of $48 on April 27, 2018 through a letter to EQUIFAX.

Each of these Plaintiffs disputed their accounts with Defendant by and through letters addressed to a Credit Reporting Agency as defined by the Fair Credit Reporting Act. These disputes were received by the Credit Reporting Agencies (herein, "CRA's") and they in turn notified the Defendant of Plaintiff's Consumer disputes via computer notification called Automated Credit Dispute Verifications (herein, "ACDV's"). The system that is used to send the ACDV's is commonly referred to as e-OSCAR.

9.      As a result of Plaintiffs' disputes, they received new credit reports and/or dispute results on the following dates from either Experian, Transunion or Equifax or a combination thereof:

a)  Latoya Berry Dispute results from TRANS UNION obtained on January 10, 2018 displaying the results of Latoya Berry's dispute of the OPTIMUM Acct# 2582. These dispute results did not display the fact that Latoya Berry was disputing said OPTIMUM account(s).

b)  Latoya Wofford Dispute results from EQUIFAX obtained on March 15, 2018 displaying the results of Latoya Wofford's dispute of the OPTIMUM Acct# 3699, Acct# 6532 and Acct# 9522. These dispute results did not display the fact that Latoya Wofford was disputing said OPTIMUM account(s).

c)  Manfred McGill Dispute results from EQUIFAX obtained on May 31, 2018 displaying the results of Manfred McGill dispute of the OPTIMUM Acct# 5877. These dispute results did not display the fact that Manfred McGill was disputing said OPTIMUM account(s).

d)  Margaret Johnson    Dispute results from TRANS UNION obtained on March 4, 2018 displaying the results of Margaret Johnson's dispute of the OPTIMUM Acct# 3944. These dispute results did not display the fact that Margaret Johnson was disputing said OPTIMUM account(s).

e)  Melissa Tucker Dispute results from EQUIFAX obtained on March 19, 2018 displaying the results of Melissa Tucker's dispute of the OPTIMUM Acct# 7740 and Acct# 7981. These dispute results did not display the fact that Melissa Tucker was disputing said OPTIMUM account(s).

f)  Monica Matlock Dispute results from EXPERIAN obtained on June 16, 2018 displaying the results of Monica Matlock's dispute of the OPTIMUM Acct# 1896 and Acct# 1827. These

dispute results did not display the fact that Monica Matlock was disputing said OPTIMUM account(s).

g)   Nora Alvarez Dispute results from TRANS UNION obtained on August 15, 2017 displaying the results of Nora Alvarez's dispute of the OPTIMUM Acct# 3854. These dispute results did not display the fact that Nora Alvarez was disputing said OPTIMUM account(s).

h)  Patrick Larson Dispute results from EQUIFAX obtained on May 29, 2018 displaying the results of their dispute of the OPTIMUM Acct# 6530. These dispute results did not display the fact that Patrick Larson was disputing said OPTIMUM account(s).

i) Robin Cook Dispute results from TRANSUNION obtained on October 26, 2017 displaying the results of Robin Cook's dispute of the OPTIMUM Acct# 3953. These dispute results did not display the fact that Robin Cook was disputing said OPTIMUM account(s).

j)   Robyn Huddle Dispute results from EQUIFAX obtained on October 31, 2017 displaying the results of their dispute of the OPTIMUM Acct# 2878. These dispute results did not display the fact that Robyn Huddle was disputing said OPTIMUM account(s).

k)   Robyn Galyean Dispute results from EQUIFAX obtained on March 9, 2018 displaying the results of Robyn Galyean's dispute of the OPTIMUM Acct# 4992 and Acct# 7415. These dispute results did not display the fact that Robyn Galyean was disputing said OPTIMUM account(s).

l)   Ron Buescher Dispute results from EXPERIAN obtained on February 13, 2018 displaying the results of Ronald Buescher's dispute of the OPTIMUM Acct# 5867. These dispute results did not display the fact that Ronald Buescher was disputing said OPTIMUM account(s).

m)  Rose Shaddix Dispute results from TRANS UNION obtained on September 18, 2017 displaying the results of Rose Shaddix's dispute of the OPTIMUM Acct# 3589, Acct# 3903 and

Acct# 3905. These dispute results did not display the fact that Rose Shaddix was disputing said OPTIMUM account(s).

n)  Sajjad Mirza Dispute results from EQUIFAX obtained on December 13, 2017 displaying the results of Sajjad Mirza's dispute of the OPTIMUM Acct# 1141 and Acct# 2979. These dispute results did not display the fact that Sajjad Mirza was disputing said OPTIMUM account(s).

o)  Sarah Johnson Dispute results from EQUIFAX obtained on May 17, 2018 displaying the results of Sarah Johnson's dispute of the OPTIMUM Acct# 9276, Acct# 8268, Acct# 1877, Acct# 2040, Acct# 9253 and Acct# 9232. These dispute results did not display the fact that Sarah Johnson was disputing said OPTIMUM account(s).

p)  Sharon Richard Dispute results from EQUIFAX obtained on December 5, 2017 displaying the results of Sharon Richard's dispute of the OPTIMUM Acct# 7556. These dispute results did not display the fact that Sharon Richard was disputing said OPTIMUM account(s).

q)  Starsha Grant Dispute results from EQUIFAX obtained on March 16, 2018 displaying the results of Starsha Grant's dispute of the OPTIMUM Acct# 5083 and Acct# 6251. These dispute results did not display the fact that Starsha Grant was disputing said OPTIMUM account(s).

r) Stephanie Kingsley Dispute results from EQUIFAX obtained on May 18, 2018 displaying the results of Stephanie Kingsley's dispute of the OPTIMUM Acct# 5148. These dispute results did not display the fact that Stephanie Kingsley was disputing said OPTIMUM account(s).

s) Temprince Harris Dispute results from EQUIFAX obtained on May 25, 2018 displaying the results of Temprince Harris's dispute of the OPTIMUM Acct# 5295. These dispute results did not display the fact that Temprince Harris was disputing said OPTIMUM account(s).

t)  Tiffany Weddle Dispute results from EQUIFAX obtained on May 25, 2018 displaying the results of Tiffany Weddle's dispute of the OPTIMUM Acct# 0985. These dispute results did not display the fact that Tiffany Weddle was disputing said OPTIMUM account(s).

u)  Tracey Sullivan Dispute results from EQUIFAX obtained on July 8, 2018 displaying the results of Tracey Sullivan's dispute of the OPTIMUM Acct# 5812, Acct# 8097, Acct# 7378 and Acct# 5172. These dispute results did not display the fact that Tracey Sullivan was disputing said OPTIMUM account(s).

v)  Tristan Berry Dispute results from EQUIFAX obtained on October 31, 2017 displaying the results of Tristan Berry's dispute of the OPTIMUM Acct# 6025, Acct# 1107, Acct# 2165, Acct# 0391, Acct# 7966, Acct# 8195 and Acct# 9717. These dispute results did not display the fact that Tristan Berry was disputing said OPTIMUM account(s).

w)  Vicki Richardson Dispute results from EQUIFAX obtained on May 29, 2018 displaying the results of Vicki Richardson's dispute of the OPTIMUM Acct# 6640. These dispute results did not display the fact that Vicki Richardson was disputing said OPTIMUM account(s).

10.    The Plaintiffs received their results on the dates listed above in paragraph 9 AND the Defendant, OPTIMUM, failed to mark any of the Plaintiffs' accounts as disputed by Consumer. The results are as follows:

a)  Latoya Berry Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated December 23, 2017 and the dispute Results were received on January 10, 2018

Please see Exhibit A Dispute letter and results.

b)  Latoya Wofford       Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated February 13, 2018 and the dispute Results were received on March 15, 2018

Please see Exhibit B Dispute letter and results.

c) Manfred McGill      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated April 27, 2018 and the dispute Results were received on May 31, 2018

Please see Exhibit C Dispute letter and results.

d) Margaret Johnson      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated January 31, 2018 and the dispute Results were received on March 4, 2018

Please see Exhibit D Dispute letter and results.

e) Melissa Tucker      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated February 13, 2018 and the dispute Results were received on March 19, 2018

Please see Exhibit E Dispute letter and results.

f) Monica Matlock      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated June 5, 2018 and the dispute Results were received on June 16, 2018

Please see Exhibit F Dispute letter and results.

g) Nora Alvarez   Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated July 13, 2017 and the dispute Results were received on August 15, 2017

Please see Exhibit G Dispute letter and results.

h) Patrick Larson      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated April 30, 2018 and the dispute Results were received on May 29, 2018

Please see Exhibit H Dispute letter and results.

i) Robin Cook      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated September 25, 2017 and the dispute Results were received on October 26, 2017

Please see Exhibit I Dispute letter and results.

j) Robyn Huddle      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated September 25, 2017 and the dispute Results were received on October 31, 2018

Please see Exhibit J Dispute letter and results.

k) Robyn Galyean      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated February 13, 2018 and the dispute Results were received on March 9, 2018

Please see Exhibit K Dispute letter and results.

l) Ronald Buescher      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated January 20, 2018 and the dispute Results were received on February 13, 2018

Please see Exhibit L Dispute letter and results.

m) Rose Shaddix      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated August 14, 2017 and the dispute Results were received on September 18, 2017

Please see Exhibit M Dispute letter and results.

n) Sajjad Mirza Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated November 13, 2017 and the dispute Results were received on December 13, 2017

Please see Exhibit N Dispute letter and results.

o) Sarah Johnson      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated April 24, 2018 and the dispute Results were received on May 17, 2018

Please see Exhibit O Dispute letter and results.

p) Sharon Richard      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated November 9, 2017 and the dispute Results were received on December 5, 2017

Please see Exhibit P Dispute letter and results.

q) Starsha Grant      Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated February 13, 2018 and the dispute Results were received on March 16, 2018

Please see Exhibit Q Dispute letter and results.

r) Stephanie Kingsley   Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated April 24, 2018 and the dispute Results were received on May 18, 2018

Please see Exhibit R Dispute letter and results.

s) Temprince Harris   Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated April 21, 2018 and the dispute Results were received on May 25, 2018

Please see Exhibit S Dispute letter and results.

t) Tiffany Weddle   Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated April 23, 2018 and the dispute Results were received on May 25, 2018

Please see Exhibit T Dispute letter and results.

u) Tracey Sullivan   Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated June 21, 2018 and the dispute Results were received on July 8, 2018

Please see Exhibit U Dispute letter and results.

v) Tristan Berry   Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated September 25, 2017 and the dispute Results were received on October 31, 2017

Please see Exhibit V Dispute letter and results.

w) Vicki Richardson   Plaintiff's dispute letter to the CRA's disputing their alleged account(s) with Defendant was dated April 27, 2018 and the dispute Results were received on May 29, 2018

Please see Exhibit W Dispute letter and results.

OPTIMUM is violating both the FDCPA and the TFDCPA by failing to mark Plaintiff's accounts as disputed even though they have received written disputes from Plaintiffs disputing the OPTIMUM accounts through the Credit Reporting Agencies. This failure to mark as disputed by OPTIMUM is the communication of credit information that is known to be false and thus a violation of the FDCPA. Furthermore, the failure to mark Plaintiffs accounts as disputed by

OPTIMUM is the using of a false representation to collect a debt, as well as, the misrepresentation of the character of a consumer debt in an attempt to collect a debt, both of which are violations of the TFDCPA.

11. Furthermore, by the violation of the TFDCPA, OPTIMUM has committed a crime under Texas Fair Debt Collection Practices Act § 392.402 against Plaintiffs and has thus caused them actual harm.

12. Additionally, by violating the TFDCPA, Plaintiffs have the right to seek an injunction against the Defendant under Texas Fair Debt Collection Practices Act § 392.403, as well as, the ability request actual damages and attorney fees.

13. OPTIMUM is providing false representations of Plaintiffs' alleged debts; a misrepresentation of the character of Plaintiffs' debts; and communicating to persons credit information OPTIMUM knows to be false regarding Plaintiff's debts all in an attempt to collect the following Consumer Debts from Plaintiffs:

| | | |
|---|---|---|
| a) | Latoya Berry | OPTIMUM Acct# 3582 |
| b) | Latoya Wofford | OPTIMUM Accts# 3699, 6532, 9522 |
| c) | Manfred McGill | OPTIMUM Acct# 5877 |
| d) | Margaret Johnson | OPTIMUM Acct# 3944 |
| e) | Melissa Tucker | OPTIMUM Accts# 7740, 7981 |
| f) | Monica Matlock | OPTIMUM Accts# 1896, 1827 |
| g) | Nora Alvarez | OPTIMUM Acct# 3854 |
| h) | Patrick Larson | OPTIMUM Acct# 6530 |
| i) | Robin Cook | OPTIMUM Acct# 3953 |
| j) | Robyn Huddle | OPTIMUM Acct# 2878 |
| k) | Robyn Galyean | OPTIMUM Accts# 4992,7415 |
| l) | Ronald Buescher | OPTIMUM Acct# 5867 |
| m) | Rose Shaddix | OPTIMUM Accts# 3589, 3903, 3905 |
| n) | Sajjad Mirza | OPTIMUM Accts# 1141,2979 |
| o) | Sarah Johnson | OPTIMUM Accts# 9276, 8268,1877, 2040, 9253, 9232 |
| p) | Sharon Richard | OPTIMUM Acct# 7556 |
| q) | Starsha Grant | OPTIMUM Acct# 5083, 6251 |
| r) | Stephanie Kingsley | OPTIMUM Acct# 5148 |
| s) | Temprince Harris | OPTIMUM Acct# 5295 |
| t) | Tiffany Weddle | OPTIMUM Acct# 0985 |

| u) | Tracey Sullivan | OPTIMUM Accts# 5812, 8097, 7378, 5172 |
| v) | Tristan Berry | OPTIMUM Accts# 6025, 1107, 2165, 0391, 7966, 8195 |
| | | 9717 |
| w) | Vicki Richardson | OPTIMUM Acct# 6640 |

14.     OPTIMUM is not allowing Plaintiffs to exorcise their statutory right under the FDCPA to have their accounts listed as disputed.

15.     OPTIMUM is violating Plaintiffs' statutory rights under the TFDCPA to have their consumer debts listed in a way that does not misrepresent their character and extent.

16.     OPTIMUM is violating Plaintiffs' statutory rights under the TFDCPA to not have their debts collected by false representations or deceptive means.

17.     Plaintiffs have the specified right under the FDCPA to have their consumer debts listed as disputed if they have requested such via dispute.  *Please see Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 249 (5th Cir. 2017) (The district court did not err when it found that ARS violated § 807(8) of the FDCPA. Section 807(8) states that a debt collector may not "[c]ommunicat[e] or threaten[ ] to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.)

18.     Plaintiffs have suffered a concrete injury and thus have standing to bring this suit. *Please see Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017) (Here, ARS's § 807(8) violation exposed Sayles to a real risk of financial harm caused by an inaccurate credit rating. *See Spokeo*, 136 S.Ct. at 1549; *see also Bowse*, 218 F.Supp.3d at 749 ("Unlike an incorrect zip code, the 'bare procedural violation' in *Spokeo*, an inaccurate credit rating creates a substantial risk of harm."). Consequently, the district court did not err when it determined that Sayles' injury was concrete and that he satisfied all elements of standing. *See Spokeo*, 136 S.Ct. at 1547.)

19.    OPTIMUM has failed to put reasonable procedures in place to prevent these errors and violations of the FDCPA and TFDCPA that Plaintiffs have suffered. Thus the bona fide error defense is not available to the Defendant. *Please see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587, 130 S. Ct. 1605, 1614, 176 L. Ed. 2d 519 (2010)(" *587 We draw additional support for the conclusion that bona fide errors in § 1692k(c) do not include mistaken interpretations of the FDCPA, from the requirement that a debt collector maintain "procedures reasonably adapted to avoid any such error.")

20.    Furthermore, OPTIMUM does not have to act willfully to be in violation of the FDCPA or the TFDCPA. In fact, Plaintiff does not have to prove that OPTIMUM acted willfully at all.  *Please see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 584, 130 S. Ct. 1605, 1613, 176 L. Ed. 2d 519 (2010) ("Congress also did not confine liability under the FDCPA to "willful" violations, a term more often understood in the civil context to excuse mistakes of law.")

21.    These accounts are not only inaccurate but also misleading, which the Fifth Circuit has addressed.  The Fifth Circuit ruled that even a technical accuracy can be so misleading to the point that it is no longer accurate, *please see Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895 (5th Cir. 1988) (a consumer report is inaccurate if it is "misleading in such a way and to such an extent that it may be expected to adversely affect credit decisions")

22.    OPTIMUM does not have reasonable procedures in place and/or adopted to prevent it from failing to mark Plaintiff's accounts as disputed.

23.    The failure to report Plaintiffs' accounts in dispute mispresents those accounts and can give a false impression to lenders and other extenders of credit whom view said accounts on the credit reports of the Plaintiffs.

24.     Plaintiffs' credit reports and files have been obtained from credit reporting agencies and have been reviewed by known and unknown, prospective and existing credit grantors and extenders of credit, with the inaccurate information being reported by OPTIMUM.

25.     Because of the conduct of OPTIMUM, Plaintiffs have suffered actual damages all to Plaintiffs' great detriment and loss.

26.     At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

27.     At all times pertinent hereto, the conduct of the Defendant, as well as, that of its agents, servants and/or employees, was reckless and grossly negligent disregard for federal and state laws and the rights of the Plaintiffs herein.

### *Count I: Federal Fair Debt Collection Practices Act*

Plaintiffs incorporates the foregoing paragraphs as though the same were set forth at length herein.

28.     OPTIMUM violated 15 U.S.C. §1692e(8) by falsely, deceptively and misleadingly representing the alleged debts of Plaintiffs.  Specifically, OPTIMUM violated 15 U.S.C. §1692e(8) by failing to mark the accounts of Plaintiffs as being disputed by said Plaintiffs. This gives the false impression to any third party that may view the credit reports of the Plaintiffs whom are defined as consumers under the FDCPA.

29.     Defendant violated 15 U.S.C. §1692e(8) by  failing to follow the FDCPA and marking Plaintiffs' accounts being collected by Defendant as disputed. This deprived Plaintiffs of the ability to place all potential third parties that may view their credit reports on notice that they

were disputing the accounts being reported on their credit reports for collection by the Defendant. This statutory right is laid out below:

15 U.S.C.A. §1692e **"False or Misleading Representation"**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(8)** Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, **including the failure to communicate that a disputed debt is disputed.**

30.     Defendant violated 15 U.S.C. §1692e(8) by reporting credit information to the Credit Reporting Agencies that they knew or should have known to be false in regard to Plaintiffs.

31.     Plaintiffs disputed information regarding their OPTIMUM accounts by and through the Credit Reporting Agencies (EXPERIAN, TRANSUNION and EQUIFAX) on the following dates:

a) Latoya Berry Disputed Defendant Acct# 3582 showing a debt balance of $1,290 on December 23, 2017 through a letter to TRANS UNION.

b) Latoya Wofford    Disputed Defendant Acct# 3699 with a balance of $370, Acct# 6532 with a balance of $150 and Acct# 9522 with a balance of $61 on February 13, 2018 through a letter to EQUIFAX.

c) Manfred McGill    Disputed Defendant Acct# 5877 showing a debt balance of $32 on April 27, 2018 through a letter to EQUIFAX.

d)  Margaret Johnson Disputed Defendant Acct# 3944 showing a debt balance of $1,942 on January 31, 2018 through a letter to TRANS UNION.

e) Melissa Tucker Disputed Defendant Acct# 7740 with a balance of $10,356 and Acct# 7981 with a balance of $212 on February 13, 2018 through a letter to EQUIFAX.

f) Monica Matlock      Disputed Defendant Acct# 1896 with a balance of $30 and Acct# 1827 with a balance of $30 on June 5, 2018 through a letter to EXPERIAN.

g)   Nora Alvarez Disputed Defendant Acct# 3854 showing a debt balance of $1,901 on July 13, 2017 through a letter to TRANS UNION.

h)   Patrick Larson Disputed Defendant Acct# 6530 showing a debt balance of $228 on April 30, 2018 through a letter to EQUIFAX.

i)   Robin Cook Disputed Defendant Acct# 3953 showing a debt balance of $600 on September 25, 2017 through a letter to TRANS UNION.

j) Robyn Huddle Disputed Defendant Acct# 2878 showing a debt balance of $30 on September 25, 2017 through a letter to EQUIFAX.

k)  Robyn Galyean Disputed Defendant Acct# 4992 with a balance of $30 and Acct# 7415 with a balance of $275 on February 13, 2018 through a letter to EQUIFAX.

l)   Ronald Buescher   Disputed Defendant Acct# 5867 showing a debt balance of $884 on January 20, 2018 through a letter to EXPERIAN.

m)   Rose Shaddix Disputed Defendant Acct# 3589 with a balance of $625, Acct# 3903 with a balance of $2,660 and Acct# 3905 with a balance of $740 on August 14, 2017 through a letter to TRANS UNION.

n) Sajjad Mirza Disputed Defendant Acct# 1141 with a balance of $104 and Acct# 2979 with a balance of $99 on November 13, 2017 through a letter to EQUIFAX.

o)   Sarah Johnson Disputed Defendant Acct# 9276 with a balance of $536, Acct# 8268 with a balance of $48, Acct# 1877 with a balance of $108, Acct# 2040 with a balance of $38, Acct# 9253 with a balance of $28 and Acct# 9232 with a balance of $29 on April 24, 2018 through a letter to EQUIFAX.

p)  Sharon Richard Disputed Defendant Acct# 7556 showing a debt balance of $460 on November 9, 2017 through a letter to EQUIFAX.

q) Starsha Grant Disputed Defendant Acct# 5083 with a balance of $103 and Acct# 6251 with a balance of $285 on February 13, 2018 through a letter to EQUIFAX.

r) Stephanie Kingsley Disputed Defendant Acct# 5148 showing a debt balance of $7,161 on April 24, 2018 through a letter to EQUIFAX.

s) Temprince Harris Disputed Defendant Acct# 5295 showing a debt balance of $179 on April 21, 2018 through a letter to EQUIFAX.

t) Tiffany Weddle Disputed Defendant Acct# 0985 showing a debt balance of $146 on April 23, 2018 through a letter to EQUIFAX.

u)  Tracey Sullivan Disputed Defendant Acct# 5812 with a balance of $54, Acct# 8097 with a balance of $30, Acct# 7378 with a balance of $30 and Acct# 5172 with a balance of $380 on June 21, 2018 through a letter to EQUIFAX.

v)   Tristan Berry Disputed Defendant Acct# 6025 with a balance of $62, Acct# 1107 with a balance of $25, Acct# 2165 with a balance of $35, Acct# 0391 with a balance of $125, Acct# 7966 with a balance of $48, Acct# 8195 with a balance of $62 and Acct# 9717 with a balance of $225 on September 25, 2017 through a letter to EQUIFAX.

w)  Vicki Richardson Disputed Defendant Acct# 6640 showing a debt balance of $48 on April 27, 2018 through a letter to EQUIFAX.

Each of these Plaintiffs disputed their accounts with Defendant by and through letters addressed to a Credit Reporting Agency as defined by the Fair Credit Reporting Act. These disputes were received by the Credit Reporting Agencies and they in turn notified the Defendant of Plaintiffs' Consumer disputes via computer notifications called Automated Credit Dispute

Verifications (herein, "ACDV's"). The system that is used to send the ACDV's is commonly referred to as e-OSCAR.

32.      After the Defendant responded to the ACDV's sent by the Credit Reporting Agencies, Plaintiffs received their dispute results and new credit reports.

a)   Latoya Berry Dispute results from TRANS UNION obtained on January 10, 2018 displaying the results of Latoya Berry's dispute of the OPTIMUM Acct# 2582. These dispute results did not display the fact that Latoya Berry was disputing said OPTIMUM account(s).

b)  Latoya Wofford Dispute results from EQUIFAX obtained on March 15, 2018 displaying the results of Latoya Wofford's dispute of the OPTIMUM Acct# 3699, Acct# 6532 and Acct# 9522. These dispute results did not display the fact that Latoya Wofford was disputing said OPTIMUM account(s).

c)   Manfred McGill Dispute results from EQUIFAX obtained on May 31, 2018 displaying the results of Manfred McGill dispute of the OPTIMUM Acct# 5877. These dispute results did not display the fact that Manfred McGill was disputing said OPTIMUM account(s).

d)  Margaret Johnson     Dispute results from TRANS UNION obtained on March 4, 2018 displaying the results of Margaret Johnson's dispute of the OPTIMUM Acct# 3944. These dispute results did not display the fact that Margaret Johnson was disputing said OPTIMUM account(s).

e)   Melissa Tucker Dispute results from EQUIFAX obtained on March 19, 2018 displaying the results of Melissa Tucker's dispute of the OPTIMUM Acct# 7740 and Acct# 7981. These dispute results did not display the fact that Melissa Tucker was disputing said OPTIMUM account(s).

f)  Monica Matlock Dispute results from EXPERIAN obtained on June 16, 2018 displaying the results of Monica Matlock's dispute of the OPTIMUM Acct# 1896 and Acct# 1827. These

dispute results did not display the fact that Monica Matlock was disputing said OPTIMUM account(s).

g)   Nora Alvarez Dispute results from TRANS UNION obtained on August 15, 2017 displaying the results of Nora Alvarez's dispute of the OPTIMUM Acct# 3854. These dispute results did not display the fact that Nora Alvarez was disputing said OPTIMUM account(s).

h)  Patrick Larson Dispute results from EQUIFAX obtained on May 29, 2018 displaying the results of their dispute of the OPTIMUM Acct# 6530. These dispute results did not display the fact that Patrick Larson was disputing said OPTIMUM account(s).

i) Robin Cook Dispute results from TRANSUNION obtained on October 26, 2017 displaying the results of Robin Cook's dispute of the OPTIMUM Acct# 3953. These dispute results did not display the fact that Robin Cook was disputing said OPTIMUM account(s).

j)   Robyn Huddle Dispute results from EQUIFAX obtained on October 31, 2017 displaying the results of their dispute of the OPTIMUM Acct# 2878. These dispute results did not display the fact that Robyn Huddle was disputing said OPTIMUM account(s).

k)   Robyn Galyean Dispute results from EQUIFAX obtained on March 9, 2018 displaying the results of Robyn Galyean's dispute of the OPTIMUM Acct# 4992 and Acct# 7415. These dispute results did not display the fact that Robyn Galyean was disputing said OPTIMUM account(s).

l)   Ron Buescher Dispute results from EXPERIAN obtained on February 13, 2018 displaying the results of Ronald Buescher's dispute of the OPTIMUM Acct# 5867. These dispute results did not display the fact that Ronald Buescher was disputing said OPTIMUM account(s).

m)  Rose Shaddix Dispute results from TRANS UNION obtained on September 18, 2017 displaying the results of Rose Shaddix's dispute of the OPTIMUM Acct# 3589, Acct# 3903 and

Acct# 3905. These dispute results did not display the fact that Rose Shaddix was disputing said OPTIMUM account(s).

n)   Sajjad Mirza Dispute results from EQUIFAX obtained on December 13, 2017 displaying the results of Sajjad Mirza's dispute of the OPTIMUM Acct# 1141 and Acct# 2979. These dispute results did not display the fact that Sajjad Mirza was disputing said OPTIMUM account(s).

o)   Sarah Johnson Dispute results from EQUIFAX obtained on May 17, 2018 displaying the results of Sarah Johnson's dispute of the OPTIMUM Acct# 9276, Acct# 8268, Acct# 1877, Acct# 2040, Acct# 9253 and Acct# 9232. These dispute results did not display the fact that Sarah Johnson was disputing said OPTIMUM account(s).

p)   Sharon Richard Dispute results from EQUIFAX obtained on December 5, 2017 displaying the results of Sharon Richard's dispute of the OPTIMUM Acct# 7556. These dispute results did not display the fact that Sharon Richard was disputing said OPTIMUM account(s).

q)   Starsha Grant Dispute results from EQUIFAX obtained on March 16, 2018 displaying the results of Starsha Grant's dispute of the OPTIMUM Acct# 5083 and Acct# 6251. These dispute results did not display the fact that Starsha Grant was disputing said OPTIMUM account(s).

r) Stephanie Kingsley Dispute results from EQUIFAX obtained on May 18, 2018 displaying the results of Stephanie Kingsley's dispute of the OPTIMUM Acct# 5148. These dispute results did not display the fact that Stephanie Kingsley was disputing said OPTIMUM account(s).

s) Temprince Harris Dispute results from EQUIFAX obtained on May 25, 2018 displaying the results of Temprince Harris's dispute of the OPTIMUM Acct# 5295. These dispute results did not display the fact that Temprince Harris was disputing said OPTIMUM account(s).

t)  Tiffany Weddle Dispute results from EQUIFAX obtained on May 25, 2018 displaying the results of Tiffany Weddle's dispute of the OPTIMUM Acct# 0985. These dispute results did not display the fact that Tiffany Weddle was disputing said OPTIMUM account(s).

u)  Tracey Sullivan Dispute results from EQUIFAX obtained on July 8, 2018 displaying the results of Tracey Sullivan's dispute of the OPTIMUM Acct# 5812, Acct# 8097, Acct# 7378 and Acct# 5172. These dispute results did not display the fact that Tracey Sullivan was disputing said OPTIMUM account(s).

v)  Tristan Berry Dispute results from EQUIFAX obtained on October 31, 2017 displaying the results of Tristan Berry's dispute of the OPTIMUM Acct# 6025, Acct# 1107, Acct# 2165, Acct# 0391, Acct# 7966, Acct# 8195 and Acct# 9717. These dispute results did not display the fact that Tristan Berry was disputing said OPTIMUM account(s).

w)  Vicki Richardson Dispute results from EQUIFAX obtained on May 29, 2018 displaying the results of Vicki Richardson's dispute of the OPTIMUM Acct# 6640. These dispute results did not display the fact that Vicki Richardson was disputing said OPTIMUM account(s).

33. The Plaintiffs received their results on the dates listed above in paragraph 32 and Defendant failed to mark any of disputed accounts listed in Paragraph 32 as disputed by consumer and/or the Plaintiffs by name.

34. Defendant is failing to adhere to 15 U.S.C. §1692e(8) by denying Plaintiffs their statutory right to have their accounts listed as tradelines on their consumer reports by Defendant as being disputed. Please see *Please see Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 249 (5th Cir. 2017) ("ARS concedes that it failed to communicate to credit bureaus that Sayles' "disputed debt [was] disputed." *Id.* ARS contends, however, that it did not have to report the dispute to credit bureaus, because § 807(8) incorporates § 809's debt dispute and validation

requirements, and Sayles did not satisfy those requirements. While ARS is correct that Sayles did not satisfy § 809's requirement that consumers must dispute their debts in writing within thirty days after receiving notice from a debt collector, that requirement does not carry over to § 807(8). In *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998), the First Circuit correctly stated that, while § 809 gives requirements for when a debt collector must verify and cease collecting on disputed debts, § 807(8) "merely requires a debt collector who knows or should know that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history.")

35. The behavior of the Defendant in this matter in its failure to mark Plaintiffs' accounts as disputed is one of the exact practices of dissemination of false information that Congress sought to protect Consumers from under the FDCPA. Please see <u>Bowse v. Portfolio Recovery Associates, LLC</u>, 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016), aff'd sub nom. Evans v. Portfolio Recovery Associates, LLC, 889 F.3d 337 (7th Cir. 2018) ("("Congress intended [§ 1692e(8)] of the FDCPA to address the dissemination of false information and abusive practices employed by debt collectors. Plaintiff's alleged injury is more than a bare procedural violation, it is the very type of injury Congress sought to eradicate and thus created a right of action to protect consumers."). Other courts in this District have affirmed, post-*Spokeo*, that harms identified by the FDCPA are sufficiently concrete to confer Article III standing. *See Saenz v. Buckeye Check Cashing of Illinois*, No. 16 CV 6052, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 WL 4264967, at *4 (N.D. Ill. Aug. 11, 2016) ("[W]hile *Spokeo* held that a procedural violation of the FCRA does not

necessarily give rise to an injury in fact, it does not follow that the same holds true of violations

of other statutes, including the FDCPA."); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446,

2016 WL 3671467, at *5 (N.D. Ill. July 11, 2016) ("[T]he prior Seventh Circuit decisions

addressing the concreteness of FDCPA injuries survived *Spokeo*, which established some general

principles but did not contain a holding specific enough to overrule Seventh Circuit law on the

FDCPA.").")

36. Plaintiffs have not been granted their specified right under the FDCPA to have their

consumer debts listed as disputed.  *Please see Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d

246, 249 (5th Cir. 2017) (The district court did not err when it found that ARS violated § 807(8)

of the FDCPA. Section 807(8) states that a debt collector may not "[c]ommunicat[e] or threaten[

] to communicate to any person credit information which is known or which should be known to

be false, including the failure to communicate that a disputed debt is disputed.)

37. As laid out above, Plaintiffs' fact patterns are virtually identical to the fact pattern *Sayles*.

Plaintiffs have suffered the same concrete injury as the Plaintiff in *Sayles* and thus have standing

to bring this suit. *Please see Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir.

2017) (Here, ARS's § 807(8) violation exposed Sayles to a real risk of financial harm caused by

an inaccurate credit rating. *See Spokeo*, 136 S.Ct. at 1549; *see also Bowse*, 218 F.Supp.3d at 749

("Unlike an incorrect zip code, the 'bare procedural violation' in *Spokeo*, an inaccurate credit

rating creates a substantial risk of harm."). Consequently, the district court did not err when it

determined that Sayles' injury was concrete and that he satisfied all elements of

standing. *See Spokeo*, 136 S.Ct. at 1547.)

### *THE BONAFIDE ERROR DEFENSE IS NOT APPLICABLE*

38. Defendant should have discovered the misleading information they were reporting on Plaintiffs' credit reports but failed to do so because of a lack of reasonable procedures being in place to ensure that Defendant marked disputed accounts as disputed. OPTIMUM has failed to put reasonable procedures in place to prevent this statutory violation of the FDCPA and TFDCPA that Plaintiffs have suffered. Thus the bona fide error defense is not available to the Defendant. *Please see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587, 130 S. Ct. 1605, 1614, 176 L. Ed. 2d 519 (2010)(" *587 We draw additional support for the conclusion that bona fide errors in § 1692k(c) do not include mistaken interpretations of the FDCPA, from the requirement that a debt collector maintain "procedures reasonably adapted to avoid any such error.")

39. The Bonafide error Defense should not be applicable to such a clear cut and easily discernable application of the FDCPA. Please see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 587, 130 S. Ct. 1605, 1614, 176 L. Ed. 2d 519 (2010) ("587 We draw additional support for the conclusion that bona fide errors in § 1692k(c) do not include mistaken interpretations of the FDCPA, from the requirement that a debt collector maintain "procedures reasonably adapted to avoid any such error."

40. Furthermore, Defendant's conduct does not even have to be willful to be liable to the Plaintiffs. Please see *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 584, 130 S. Ct. 1605, 1613, 176 L. Ed. 2d 519 (2010)(" Congress also did not confine liability under the FDCPA to "willful" violations, a term more often understood in the civil context to excuse mistakes of law."

41. Even if OPTIMUM is not aware of the ongoing violations of the FDCPA it is committing against Plaintiffs, that does not excuse its behaving and make the bonafide error defense available

to Optimum. Please see <u>Serna v. Law Office of Joseph Onwuteaka, P.C.</u>, 614 Fed. Appx. 146, 155 (5th Cir. 2015) ("Onwuteaka's argument is not only meritless, but frivolous and sanctionable. Onwuteaka's sole authorities for the premise that mistakes of law qualify for the bona fide error defense are *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 538 F.3d 469 (6th Cir.2008), and *Taylor v. Luper, Sheriff & Niedenthal Co., L.P.A.,* 74 F.Supp.2d 761 (S.D.Ohio 1999). The Supreme Court granted certiorari in *Jerman* and ultimately reversed the Sixth Circuit on precisely this point. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 130 S.Ct. 1605, 1624–25, 176 L.Ed.2d 519 (2010) (holding that "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute" and reversing the contrary judgment of the court of appeals). Despite including outdated subsequent history in his citation indicating that the Supreme Court had granted certiorari in *Jerman,* Onwuteaka retained this citation and presented the Sixth Circuit's now-rejected original holding to this Court as valid law. *Taylor,* for its part, predates both opinions in *Jerman,* and it pertains to a mistake about the requirements of state law rather than about the requirements of the FDCPA itself. *Taylor,* 74 F.Supp.2d at 765.

42. Please also see <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA</u>, 559 U.S. 573, 581–82, 130 S. Ct. 1605, 1611, 176 L. Ed. 2d 519 (2010) We decline to adopt the expansive reading of § 1692k(c) that Carlisle proposes. We have long recognized the "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally." *Barlow v. United States,* 7 Pet. 404, 411, 8 L.Ed. 728 (1833) (opinion for the Court by Story, J.); see also *Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal

prosecution *582 is deeply rooted in the American legal system"). Additionally, see <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA</u>, 559 U.S. 573, 587, 130 S. Ct. 1605, 1614, 176 L. Ed. 2d 519 (2010) ("*587 We draw additional support for the conclusion that bona fide errors in § 1692k(c) do not include mistaken interpretations of the FDCPA, from the requirement that a debt collector maintain "procedures reasonably adapted to avoid any such error." )

### *Count II: Texas Fair Debt Collection Practices Act and Claims under Texas Law*

Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

43. The Texas Financial Code lays out Texas' counterpart to the FDCPA. Defendant violated Tex. Fin. Code Ann. § 392.304(8), and Tex. Fin. Code Ann. § 392.304(19) while it was in the process of collecting consumer debts from Plaintiffs.  Additionally, Defendant was grossly negligent in failing to adopt reasonable procedures to avoid this specific harm that Plaintiffs' have suffered.  This is demonstrated by the number of Plaintiffs in this matter and thus OPTIMUM is liable to Plaintiffs for exemplary damages under V.T.C.A., Civil Practice & Remedies Code § 41.001 because of their gross negligence Additionally, OPTIMUM is also liable to Plaintiffs for exemplary damages under V.T.C.A., Civil Practice & Remedies Code § 41.001 due to the fact it fraudulently failed to report the correct disputed status of the alleged debts it was attempting to collect from Plaintiffs on their consumer credit reports. Finally, OPTIMUM has committed a misdemeanor against the Plaintiffs by violating the Texas Fair Debt Collection Practices Act § 392.402 and has thus caused Plaintiffs to be victims and suffer actual harm.

44. Please see the relevant sections of the TFDCPA below:

Tex. Fin. Code Ann. § 392.304 (West)

Texas Fair Debt Collection Practices Act § 392.304. FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS.

(a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:

(8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;

(19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

Texas Fair Debt Collection Practices Act § 392.402. CRIMINAL PENALTY.

(a) A person commits an offense if the person violates this chapter.
(b) An offense under this section is a misdemeanor punishable by a fine of not less than $100 or more than $500 for each violation.

Texas Fair Debt Collection Practices Act § 392.403. CIVIL REMEDIES. (a) A person may sue for:

(1) injunctive relief to prevent or restrain a violation of this chapter; and
(2) actual damages sustained as a result of a violation of this chapter.
(b) A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs.

45. Please see the relevant sections of the V.T.C.A., Civil Practice & Remedies Code below:

V.T.C.A., Civil Practice & Remedies Code § 41.001
§ 41.001. Definitions
Currentness
In this chapter:
(1) "Claimant" means a party, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff, seeking recovery of damages. In a cause of action in which a party seeks recovery of damages related to injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes both that other person and the party seeking recovery of damages.
(2) "Clear and convincing" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.
(3) "Defendant" means a party, including a counterdefendant, cross-defendant, or third-party defendant, from whom a claimant seeks relief.
(4) "Economic damages" means compensatory damages intended to compensate a claimant for actual economic or pecuniary loss; the term does not include exemplary damages or noneconomic damages.

(5) "Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages are neither economic nor noneconomic damages. "Exemplary damages" includes punitive damages.

**(6) "Fraud" means fraud other than constructive fraud.**

(7) "Malice" means a specific intent by the defendant to cause substantial injury or harm to the claimant.

(7-a) "Net worth" means the total assets of a person minus the total liabilities of the person on a date determined appropriate by the trial court.

(8) "Compensatory damages" means economic and noneconomic damages. The term does not include exemplary damages.

(9) "Future damages" means damages that are incurred after the date of the judgment. Future damages do not include exemplary damages.

(10) "Future loss of earnings" means a pecuniary loss incurred after the date of the judgment, including:

(A) loss of income, wages, or earning capacity; and

(B) loss of inheritance.

**(11) "Gross negligence" means an act or omission:**

**(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and**

**(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.**

V.T.C.A., Civil Practice & Remedies Code § 41.003

§ 41.003. Standards for Recovery of Exemplary Damages

Currentness

(a) Except as provided by Subsection (c), exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from:

(1) **fraud;**

(2) malice; or

**(3) gross negligence.**

(b) The claimant must prove by clear and convincing evidence the elements of exemplary damages as provided by this section. This burden of proof may not be shifted to the defendant or satisfied by evidence of ordinary negligence, bad faith, or a deceptive trade practice.

(c) If the claimant relies on a statute establishing a cause of action and authorizing exemplary damages in specified circumstances or in conjunction with a specified culpable mental state, exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the damages result from the specified circumstances or culpable mental state.

(d) Exemplary damages may be awarded only if the jury was unanimous in regard to finding liability for and the amount of exemplary damages.

(e) In all cases where the issue of exemplary damages is submitted to the jury, the following instruction shall be included in the charge of the court:
"You are instructed that, in order for you to find exemplary damages, your answer to the question regarding the amount of such damages must be unanimous."

46. As can be seen by the number of Plaintiffs, this violation of the FDCPA and TFDCPA is a common and ongoing violation committed by the Defendant. This one complaint contains over twenty consumers affected by Defendant's grossly negligent behavior. Defendant clearly knows that by not marking the accounts of the Plaintiffs as disputed it is violating both the Texas and Federal Fair Debt Collection Practice Acts and thus causing harm to the Plaintiffs. Additionally, Defendant has to at least subjectively know what it is doing to violate Plaintiffs' rights to have their credit reported fairly and accurately. Thus, Defendant should be liable to Plaintiffs for exemplary damages.

47. Additionally, Defendant is committing actual fraud by intentionally reporting inaccurate information on the Credit Reports of Plaintiffs. This against makes the Defendant labile to the Plaintiffs for exemplary damages.

## *THE BONAFIDE ERROR DEFENSE IS NOT APPLICABLE TO THE TFDCPA IN THIS CASE*

48. As can be seen by the number of Plaintiffs in this matter, Defendant failing to mark a Consumer's credit report with the correct language of "disputed by consumer" is not an isolated incident. If Defendant has a procedure in place to prevent this violation of the FDCPA and TFDCPA there is no logical way it can be seen as working or reasonable. Thus the bonafide error defense eludes Defendant under the TFDCPA as well. Please see CA Partners v. Spears, 274 S.W.3d 51, 71 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("Section 1692k of the Fair Debt Collection Practices Act and section 392.401 of the Texas Finance Code provide a "bona fide error" defense for debt collectors accused of statutory violations. *See* 15 U.S.C. § 1692k(c); Tex.

Fin.Code § 392.401. Section 1692k provides,A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.15 U.S.C. § 1692k(c). Similarly, section 392.401 states that "[a] person does not violate this chapter if the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error." Tex. Fin.Code § 392.401. A "bona fide error" is an error which is made in the course of a good-faith attempt at compliance with statutory requirements. *Callaway v. East Tex. Gov't Credit Union,* 619 S.W.2d 411, 415 (Tex.Civ.App.-Tyler 1981, writ ref'd n.r.e.). However, in order to utilize this defense, the debt collector must show that reasonable procedures were used to prevent the error which caused the violation in question. *See Cent. Adjustment Bureau, Inc. v. Gonzales,* 528 S.W.2d 314, 316 (Tex.Civ.App.-San Antonio 1975, no writ) (interpreting former version of state act); *Johnson v. Riddle,* 443 F.3d 723, 729 (10th Cir.2006) (interpreting federal act). In the absence of such a showing, a debt collector may not successfully assert the bona fide error defense under either the state or the federal act. *See Cent. Adjustment Bureau, Inc.,* 528 S.W.2d at 316; *Johnson,* 443 F.3d at 729.")

## *LAW RELEVANT TO ALL CLAIMS*

### *MUTUAL CAUSES OF ACTION*

47. Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

48. This suit is based upon the Defendants violation of the Texas Fair Debt Collection Practices Act and the Fair Debt Collection Practices Act. All causes of action were causes of the damages which Plaintiffs have suffered.

*PLAINTIFFS ARE CORRECTLY JOINED TO PURSUE THEIR MUTUAL CAUSES OF*
*ACTION*

49.      When determining if Plaintiffs are joined properly pursuant to Rule 21, courts have

to look to Rule 20 for guidance.  Please see <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600

F.3d 516, 521 (5th Cir. 2010)(Since Rule 21 does not provide any standards by which district

courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance. *See Pan*

*Am. World Airways, Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.,* 523 F.2d 1073, 1079 (9th

Cir.1975). Rule 20(a)(1) provides that: Persons may join in one action as plaintiffs if: (A) they

assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the

same transaction, occurrence, or series of transactions or occurrences; and(B) any question of law

or fact common to all plaintiffs will arise in the action.).    All of the allegations and facts in each

of the Plaintiffs cases are identical. All Plaintiffs disputed their accounts with the Defendant

through the Credit Reporting Agencies and the Defendant failed to have their accounts collected

by the  Defended marked as disputed on the corresponding dispute results.

50. Furthermore, joinder is encouraged by the courts. The United States Supreme Court has

ruled that joinder of claims is strongly encouraged. Please see <u>United Mine Workers of Am. v.</u>

<u>Gibbs</u>, 383 U.S. 715, 724, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966)(Under the Rules, the

impulse is toward entertaining the broadest possible scope of action consistent with fairness to

the parties; joinder of claims, parties and remedies is strongly encouraged).

51. It makes more sense and is much more efficient to try the Plaintiffs' cases together.  <u>Adrain</u>

<u>v. Genetec Inc.</u>, 2:08-CV-423, 2009 WL 3063414, at *2 (E.D. Tex. Sept. 22, 2009)(Severing this

case and creating multiple lawsuits would create problems that outweigh any alleged

inconvenience of Elsag defending a suit in this forum. The Federal Circuit recently held in *In re*

*Volkswagen II* that creation of multiple lawsuits is a "paramount consideration" weighing against

transfer. *In re Volkswagen of Am. ., Inc.,* 566 F.3d 1349, 1351 (Fed.Cir.2009). "As the Supreme Court [has] noted ..., '[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.' ". *Id.* (quoting *Continental Grain Co. v. The FBL–585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)) (citations omitted))

52. All of the Plaintiffs share identical questions of law and facts. Just because they were disputed separately, doesn't diminish the fact that the law and facts are identical.  All of the Plaintiffs' allege that Defendant failed to mark their collection accounts as disputed based on their dispute of said accounts. Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516 (5th Cir. 2010)(Rule governing permissive joinder of parties creates a two-pronged test, allowing joinder of plaintiffs when (1) their claims arise out of the "same transaction, occurrence, or series of transactions or occurrences" and when (2) there is **at least one common question of law or fact linking all claims**. Fed.Rules Civ.Proc.Rule 20, 28 U.S.C.A.); please see Baergas v. City of New York, 04CIV2944(BSJ)(HBP), 2005 WL 2105550, at *6 (S.D.N.Y. Sept. 1, 2005)(Thus, severance is inappropriate because plaintiff's employment and civil rights claims are factually and legally intertwined, and the evidence relevant to each claim will overlap. *See Puricelli v. CNA Ins. Co., supra,* 185 F.R.D. at 143 ("[**Severance] does not require the commonality of all** questions of law and fact raised in the dispute, **rather, the requirement is satisfied if there is any** question of law or fact common to all parties ."); *see also Epstein v. Kemper Ins. Cos.,* 210 F.Supp.2d 308, 320 (S.D.N.Y.2002) (denying severance motion where plaintiffs alleged similar factual and legal questions concerning age discrimination by the same supervisor); *Rochlin v. Cincinnati Ins. Co.,* IP00-1898-CH/K, 2003 WL 21852341 at *14 (S.D.Ind. July 8, 2003) (in putative class action discrimination case, granting plaintiffs' motion for permissive joinder due, in part, to the likelihood

of duplicative evidence offered by each plaintiff).); *Hanley v. First Investors Corp.,* 151 F.R.D.

76, 78–79 (E.D.Tex.1993). As to the second prong of Rule 20(a)(2), regarding common questions

of law or fact, it is clear that not all of the facts must be common to every defendant; and joinder

is appropriate so long as there is a common question of fact of law among all defendants. *See Nor–*

*Tex Agencies, Inc. v. Jones,* 482 F.2d 1093, 1100 (5th Cir.1973).

53. If the Plaintiffs filed their suits separately they could still testify at each other's trials and

thus Defendant is not prejudiced by multiple Plaintiffs' filing together. Please see <u>Murnane v.</u>

<u>Las Vegas Metro. Police Dept.</u>, 2:13-CV-01088-MMD, 2015 WL 1442262, at *7 at fn 6 (D.

Nev. Mar. 30, 2015)(LVMPD also argues, as an aside in its Motion and more thoroughly in its

reply brief, that it will be prejudiced if Plaintiffs proceed together. (*See* dkt. no. 41 at 6; dkt. no.

52 at 5–6.) LVMPD notes that "Plaintiffs realize there is strength in numbers," arguing that a

jury might be more willing to find liability if asked to consider both Plaintiffs' allegations

together. (Dkt. no. 52 at 5.) But even if the Court severed this matter, each Plaintiff could testify

during the other Plaintiff's trial.)

<u>*THE STANDARD FOR PLAINTIFFS' DISPUTE LETTER IS VERY LOW*</u>

54. The Plaintiffs are simply required to put the Defendants on notice that they are disputing

the accounts that Defendant is reporting on their credit reports. Please see the Appellant's brief in

<u>Sayles v. Advanced Recovery Sys., Inc.</u>, 865 F.3d 246, 249 (5th Cir. 2017) for the description of

the letter used by Plaintiff to prevail in the *Sayles* case. (On 3/04/14, an unsigned letter (ROA.90-

91; RE 5) clearly copied from a CRO website (ROA.179-181; RE 6) arrived at ARS by fax. It

requests untimely "validation" of "all claims" (otherwise unidentified) per § 1692g(b) of the

FDCPA, and states only that "your claim" is "disputed" with no reason given. ARS disregarded

this "signature format" CRO "dispute" letter. Shortly thereafter, using the services of an

undisclosed out-of-state law firm, the Law Office of Michael Lupolover ("LOML"), Mr. Sayles filed a single count complaint accusing ARS of violating 15 U.S.C. § 1692e(8) by failing to report his "disputed debt as disputed.")   *Ronald SAYLES, Plaintiff - Appellee, v. ADVANCED RECOVERY SYSTEMS, INC., Defendant - Appellant., 2016 WL 7337002 (C.A.5), 3.*

55. Additionally, one Appellate Court has even affirmed a District Court's decision to have the dispute letters sent to the Credit Reporting Agency excluded from evidence. Please see <u>Daugherty v. Ocwen Loan Servicing, LLC</u>, 701 Fed. Appx. 246, 255 (4th Cir. 2017) ("Finally, Ocwen argues that the district court abused its discretion by excluding the letters sent by Aggressive to Equifax, on which the dispute verification requests were based. We disagree. As discussed above, the reasonableness of Ocwen's investigation rested on an evaluation whether Ocwen properly investigated the disputed information using its own records, not records from a remote source. Thus, the district court did not abuse its discretion in excluding the letters that Aggressive sent to Equifax, because such extrinsic information was not known to Ocwen and, thus, was not relevant to the reasonableness of Ocwen's investigation under the facts presented.")

56.    Please also see *Evans v. Portfolio Recovery Associates, LLC, 889 F.3d 337, 346* (7th Cir. 2018) The FDCPA makes clear that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, the statute lists as illicit: "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Id. § 1692e(8) (emphasis added). Plaintiffs each sent a Letter to PRA which stated "the amount reported is not accurate." Despite receiving the Letters, PRA still reported plaintiffs' debts to credit reporting agencies without noting that the debt amounts were disputed. This is a clear violation of the statute.  True, § 1692e(8) does

not define "dispute" or provide a procedure for consumers to follow to dispute their debt. But the ordinary meaning of "dispute" is clear. See Dispute, Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/dispute (last visited April 23, 2018) (defining "dispute" as "to call into question or cast doubt upon"). When plaintiffs said "the amount reported is not accurate," they "call[ed] into question" the amount PRA claimed they owed—in other words, they disputed the debt. There is simply no other way to interpret this language. Each of the district courts below arrived at the same conclusion. See Paz v. Portfolio Recovery Assocs., LLC, No. 15-cv-5073, 2016 WL 6833932, at *4 (N.D. Ill. Nov. 21, 2016); Evans v. Portfolio Recovery Assocs., LLC, No. 15-cv-4498, 2016 WL 6833930, at *2 (N.D. Ill. Nov. 20, 2016); Bowse v. Portfolio Recovery Assocs., LLC, 218 F.Supp.3d 745, 751 (N.D. Ill. 2016); Gomez v. Portfolio Recovery Assocs., LLC, No. 15-cv-4499, 2016 WL 3387158, at *3 (N.D. Ill. June 20, 2016). So too did two additional courts, addressing the meaning of the same statement. Baranowski v. Portfolio Recovery Assocs., LLC, No. 15-cv-2939, 2018 WL 1534967, at *3 (N.D. Ill. Mar. 29, 2018); Flores v. Portfolio Recovery Assocs., LLC, No. 15-cv-2443, 2017 WL 5891032, at *3 (N.D. Ill. Nov. 29, 2017). Evans v. Portfolio Recovery Associates, LLC, 889 F.3d 337, 346 (7th Cir. 2018)

57.    Defendant cannot deny that they were aware Plaintiffs were disputing the collection accounts that Defendant was reporting on their consumer credit reports.

58.    The of Defendant was the direct and proximate cause, as well as a substantial factor in bringing about the serious injuries, damages and harm to Plaintiffs that are outlined above and, as a result, Defendant is liable to compensate the Plaintiffs for the full amount of actual, statutory, compensatory and punitive damages, as well as such other relief, permitted by law.

59.    As a result of Defendant's conduct, Plaintiffs have suffered actual damages and all to Plaintiffs great detriment and loss.

60.    At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

61.    At all times pertinent hereto, the conduct of the Defendant, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

## DEMAND FOR JURY TRIAL

62.    Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs seek judgment in Plaintiffs' favor and damages against the Defendant, based on the following requested relief:

(a)    Actual damages pursuant to Tex. Fin. Code Ann. § 392.304;

(b)    Statutory damages pursuant to Tex. Fin. Code Ann. § 392.304;

(c)    Punitive damages pursuant to V.T.C.A., Civil Practice & Remedies Code § 41.003;

(d)    Injunctive Relief pursuant to Tex. Fin. Code Ann. § 392.304

(e)    Costs and reasonable attorney's fees pursuant to Tex. Fin.

Code Ann. §      392.304;

(e) Actual damages pursuant to 15 U.S.C. §1692k;

(f) Statutory damages pursuant to 15 U.S.C. §1692k;

(g) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k

(h)Such other and further relief as may be necessary, just and proper.

Dated:  August 17, 2018

Respectfully submitted,

/s/ Jonathan Raburn
Jonathan Raburn
McCarty & Raburn, A Consumer Law Firm, PLLC
Louisiana Bar Roll No. 28728
3000 Custer Rd. Suite 270 Box 1501
Plano, TX 75075
Telephone: 225-412-2777
jonathan@geauxlaw.com

/s/ Dennis McCarty
Dennis McCarty
McCarty & Raburn, A Consumer Law Firm, PLLC
Louisiana Bar Roll No. 28728
3000 Custer Rd. Suite 270 Box 1501
Plano, TX 75075
Telephone: 817-704-3375
dennismccartylaw@gmail.com

*/s/ James A.Foley*
James A. Foley
James Foley PLLC
Texas Bar No. 24055491
4116 W. Vickery Blvd. #103
Fort Worth, Texas 76107
(817) 738-1633
Fax (866) 512-5807
Email: James@JamesFoleypllc.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys on record:

Date Signed this the 17th day of August 2018

Respectfully Submitted,

/s/Jonathan Raburn
Jonathan Raburn

Attorney for Plaintiff

/